UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHIANNON NUGENT and JUAN
QUINTANA, as co-personal
representatives of the Estate of
Juan A. Quintana II, Deceased,

       Plaintiffs,

         Case No. 21-12741

    v.

         Hon. George Caram Steeh

SPECTRUM JUVENILE JUSTICE
SERVICES and SPECTRUM HUMAN
SERVICES, INC.,

       Defendants.
_____/

OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS (ECF NO. 40)

Before the court is Defendants' motion to dismiss, which has been

fully briefed. For the reasons explained below, Defendant's motion is

denied.

BACKGROUND FACTS

Plaintiffs are the parents of Juan A. Quintana II, who tragically

committed suicide at age fifteen while at Defendants' Highland Park facility.

On August 24, 2018, Quintana was "court-ordered" to the facility, which

Defendants operate as a private, state-licensed "child caring institution."

- 1 -

Plaintiffs allege that the Highland Park facility "closely resembles . . . a jail" and the "children were treated like prisoners." ECF No. 32 at ¶¶ 16-18.

According to the complaint, Defendants contract with and are paid by the state and/or local governments to house children at their facilities. *See* ECF No. 32 at Ex. 2. They provide "residential foster care juvenile justice" services. These services include general residential treatment services for youth who have "exhibited criminal behaviors," "mental health and behavior stabilization" for youth with severe emotional and behavioral problems, sex offender treatment, residential care for children with developmental disabilities, and substance abuse rehabilitation. Defendants' agreement with the State of Michigan contains numerous requirements regarding how Defendants must operate its facilities and the services it must provide, including educational, rehabilitation, recreational, and medical services.

For example, Defendants are required to check on residents every fifteen minutes, due to their "high-risk nature." ECF No. 32 at ¶¶ 30-31. Plaintiffs allege that no one checked on Juan Quintana between 7:57 p.m. and 8:42 p.m. on September 11, 2018, during which time he committed suicide by hanging himself in his bedroom. Plaintiffs contend that Defendants were on notice of Quintana's propensity to commit suicide and were deliberately indifferent to the risk. Quintana was required to keep a

journal, which Defendants reviewed on a daily basis. According to the complaint, Defendants "clearly were aware of Juan's cries for help in the journal and were deliberately indifferent to his health." ECF No. 32 at ¶ 38. In the two weeks before his death, Quintana wrote almost daily entries about his "bad" anxiety and depression, such as "I constantly feel like just breaking down, crying, and giving up. . . . I'm just in a shitty mood. I don't really know what to do anymore. I need help because I literally feel like I can't do this. I feel depressed as fuck!" *Id.* at ¶ 39. Plaintiffs allege that "Defendants were deliberately indifferent to Juan's health when they ignored his cries for help found within his journal." *Id.* at ¶ 40. They also assert that Quintana had been cutting himself while under Defendants' care, due to his anxiety. *Id.* at ¶ 41.

Plaintiffs allege that Defendants were also aware of the risk of suicide in general, "so much so that employees would walk around with scissors in their pockets in order to cut down inmates who were attempting to hang themselves." *Id.* at ¶ 50. Despite this knowledge, Defendants regularly skipped the required "15-minute eye-on checks" and employees falsified the logs indicating that the checks were made. *Id.* ¶ 48. Plaintiffs allege that supervisors signed off on the falsified logs, and that it was Defendants'

custom, policy or practice to skip the periodic checks and to approve the falsified logs. *Id.*

Plaintiffs assert a *Monell* claim against Defendants, alleging that they were deliberately indifferent to a serious risk of harm to Quintana, under either the Fourteenth or Eighth Amendments. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Defendants seek dismissal for failure to state a claim or pursuant to the *Colorado River* abstention doctrine.

<u>LAW AND ANALYSIS</u>

I.   <u>Standard of Review</u>

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

- 4 -

II.    Constitutional Claims

A plaintiff may bring a claim under 42 U.S.C. § 1983 when he is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. A plaintiff must demonstrate that (1) he was deprived of a constitutional right; and (2) that deprivation occurred under color of state law. *Id.* The Sixth Circuit has determined that Defendants were state actors in this case. *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135 (6th Cir. 2023).

Plaintiffs allege that Quintana was deprived of his right to medical care under either the Eighth or Fourteenth Amendments. The Eighth Amendment applies to prisoners who have been convicted of a crime, whereas the Fourteenth Amendment applies to pretrial detainees. *See Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). Although these claims have been historically analyzed "under the same rubric," recently the jurisprudence has evolved to require different tests. *Id.* at 591-97.

The Eighth Amendment prohibits "cruel and unusual punishments," "which includes a right to be free from deliberate indifference to an inmate's serious medical needs." *Id.* at 591 (citation omitted). An Eighth Amendment

deliberate indifference claim has both objective and subjective components. *Id.* "To meet the objective component, the plaintiff must show that the medical need is 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To meet the subjective component, the plaintiff must show that an official knew of and disregarded an excessive risk to inmate health or safety." *Id.* (cleaned up).

For Fourteenth Amendment claims, the objective component is the same, but the subjective standard is lowered from "actual knowledge to recklessness." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 316 (6th Cir. 2023), *cert. denied sub nom. Lewis Cnty., KY v. Helphenstine*, 2024 WL 218779 (U.S. Jan. 22, 2024). Accordingly, a plaintiff must show (1) that he had a sufficiently serious medical need and (2) that the defendant "acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 317.

The correct standard depends upon "whether Quintana was formally convicted of a crime (in which case the Eighth Amendment would seem to govern) or instead his custodial status was more akin to that of a pretrial detainee (to whom the Fourteenth Amendment would appear to apply)." *Nugent*, 72 F.4th at 144. Eighth Amendment protections attach once a

person has been convicted and sentenced. *See Plair v. County of Macomb*, 2023 WL 4933932 at *10 (E.D. Mich. Aug. 2, 2023) (citing *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir.  2016), among other cases). In *Plair*, the court held that a pretrial detainee, who had been convicted but not yet sentenced, was protected by the higher Fourteenth Amendment standard, rather than the Eighth Amendment. *Id.* at *10-11.

Plaintiffs suggest that Quintana's claim arises under the Fourteenth Amendment, and they have pleaded an Eighth Amendment claim in the alternative. Although the complaint states that Quintana was "court-ordered" to the youth facility, it does not otherwise provide the factual content necessary for the court to determine the proper standard. However, the court need not do so at this stage, because Plaintiffs have alleged sufficient facts to support a deliberate indifference claim under either standard.

Plaintiffs allege that Quintana had a serious medical need, in that he was suicidal. *See Estate of Abbey v. Herring,* 598 F. Supp.3d 572, 587 (E.D. Mich. 2022) ("Suicidal tendencies are considered 'serious medical needs' within the Sixth Circuit."). Plaintiffs also allege that Defendants knew or should have known of Quintana's suicidal tendencies based upon his journal entries and his history of self-mutilation. Despite this alleged

knowledge, Defendants failed to provide treatment and had a policy of skipping the required, periodic "eye-on" checks. These allegations are sufficient at this stage of the proceedings. Plaintiffs must only allege facts stating a plausible claim; they are not required to prove their claim in response to a motion to dismiss. *See Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627, 638 n.4 (6th Cir. 2020) ("As our case law makes clear . . . '[a] complaint need not set down in detail all the particularities of a plaintiff's claim against the defendant.'"). Whether the facts, as developed through discovery, ultimately rise to the level of deliberate indifference is a question for another day.

III.    *Colorado River* Abstention

Defendants argue that the court should abstain from exercising jurisdiction over this action pursuant to the *Colorado River* doctrine, because there is a state court action pending between the parties. Although federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted to them, they may abstain from exercising jurisdiction in limited circumstances, informed by "considerations of judicial economy and federal-state comity." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)). The principles underlying the

*Colorado River* doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817. The Sixth Circuit has emphasized that abstention is "only appropriate in extraordinary circumstances," *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994), and that "the mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain." *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557-58 (6th Cir. 2013) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)).

In determining whether *Colorado River* abstention is appropriate, the court first examines whether the state and federal proceedings are parallel. *Romine*, 160 F.3d at 339. The parties and causes of action need not be identical, but rather "substantially similar." *Id.*; *see also Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 Fed. Appx. 390, 394 (6th Cir. 2019). The court next balances several factors set forth in *Colorado River* and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, (1983). These factors are as follows:

> (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation . . . (4) the order in which jurisdiction was

obtained. . . . (5) whether the source of governing law is
state or federal; (6) the adequacy of the state court action
to protect the federal plaintiff's rights; (7) the relative
progress of the state and federal proceedings; and (8) the
presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340-41 (citations omitted). The court is not to apply

the factors as a "mechanical checklist," but carefully balances them, with

the balance "heavily weighted in favor of the exercise of jurisdiction."

*Moses H. Cone*, 460 U.S. at 16. The court need not undertake this

analysis, however, if the federal and state cases are not parallel. *Baskin*, 15

F.3d at 572.

The federal and state cases involve the same factual background and

substantially similar parties. However, the state case involves state tort

claims (negligence), whereas this action seeks to vindicate federal

constitutional rights. These claims require different legal elements and

permit different relief. Courts within the Sixth Circuit have generally

concluded that federal constitutional claims are not parallel to state tort

claims arising from the same facts. *See Walker v. Louisville/Jefferson Cnty.*

*Metro Gov't*, 583 F. Supp. 3d 887, 897 (W.D. Ky. 2022) (noting that "[a]

federal court's obligation to exercise its jurisdiction is 'particularly weighty'

in § 1983 cases"); *Gentry v. Wayne Cnty.*, No. 10-CV-11714, 2010 WL

4822749, at *3 (E.D. Mich. Nov. 22, 2010) (noting that punitive damages

are not recoverable under Michigan law and that "[t]here are serious differences between the standards of proof for state tort claims and federal civil rights that the Court would be remiss to overlook"); *Hayes v. City of Columbus*, 2011 WL 2174973, at *4 (S.D. Ohio June 3, 2011).

"The key issue in deciding whether abstention was proper is whether complete relief was obtained in state court." *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990). Given the different theories of recovery and potential relief, Plaintiffs will not obtain complete relief in state court. Accordingly, the cases are not parallel and abstention is not appropriate. *See id.* (abstention inappropriate when state court failed to address constitutional issues); *Moses H. Cone*, 460 U.S. at 28 ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.").

Accordingly, IT IS HEREBY ORDERED that Defendants' motion to dismiss (ECF No. 40) is DENIED.

Dated: March 20, 2024

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

- 11 -

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on March 20, 2024, by electronic and/or ordinary mail.

s/Lashawn Saulsberry
Deputy Clerk