UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHIANNON NUGENT, JUAN
QUINTANA, SR., and ESTATE
OF JUAN A. QUINTANA, II,
                              Plaintiffs,

v.

SPECTRUM JUVENILE
JUSTICE SERVICES and
SPECTRUM HUMAN
SERVICES, INC.,
                              Defendants.
_____/

Case No. 21-12741

Jonathan J.C. Grey
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## <u>ORDER ON DISCOVERY MOTIONS (ECF Nos. 60, 75, 84, 85)</u>

A.   <u>Background</u>

This matter is before the Court on a few remaining discovery disputes.  In

this Order, the Court addresses Defendants' motion for protective order on remand

from the District Judge (ECF No. 60), Plaintiffs' motions to compel and for

sanctions (ECF Nos. 75, 84), and Defendants' motion to compel and to strike

Plaintiffs' witness list (ECF No. 85).  These motions were referred to the

undersigned.  (ECF No. 94).  The Court heard argument on September 6, 2024.

B.   <u>General Discovery Principles</u>

Parties may obtain discovery related to any nonprivileged matter relevant to

any party's claim or defense and proportional to the needs of the case, considering

the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P.

26.  Information within this scope of discovery need not be admissible in evidence

to be discoverable.  *Id.*  "Although a [party] should not be denied access to

information necessary to establish her claim, neither may a [party] be permitted to

'go fishing,' and a trial court retains discretion to determine that a discovery

request is too broad and oppressive."  *Superior Prod. P'ship v. Gordon Auto Body*

*Parts Co*., 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v.*

*Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking

discovery may move for an order compelling an answer, designation, production,

or inspection.  Fed. R. Civ. P. 37.

C.    Discussion

1.    Defendants' Motion for Protective Order (ECF No. 60)

In Request for Production ("RFP") 27, Plaintiffs sought "Incident reports for

any/all incidents in which a report was generated and/or taken involving any

injury, self-harm, or neglect at any Spectrum facility in the last 15 years."  (ECF

No. 60-3, PageID.1924).  RFP 25 similarly sought information for the last 15

years.  (*Id.*).  Defendants sought a protective order limiting responses to five years

2

at the at the Calumet facility, where Juan was housed from August 8, 2018, though

September 11, 2018.  (ECF No. 60, PageID.1897).  They insisted that information

beyond that timeframe and from other facilities would be irrelevant to the issues

here.

The Court previously limited the temporal scope of the documents request to

five years prior to and one after Juan's death.  (ECF No. 64, PageID.2258-60).

That decision is undisturbed.  Defendants' motion for protective order was

remanded for consideration of the request to limit the facilities Defendants must

search.  So what is left to be determined is whether Defendants are entitled to a

protective order precluding discovery of documents created at Spectrum-run

facilities beyond the Calumet and Lincoln juvenile detention centers and the scope

of the search terms.

Federal Rule of Civil Procedure 26(c) allows the Court to issue protective

orders for good cause shown to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense, including that the

disclosure or discovery not be had, or that the disclosure or discovery be limited

to certain matters.  Fed. R. Civ. P. 26(c).  The party seeking a protective order has

the burden of showing that good cause exists for the order.  *Nix v. Sword*, 11 F.

App'x 498, 500 (6th Cir. 2001).  To show good cause, the movant must articulate

specific facts showing "clearly defined and serious injury resulting from the

3

discovery sought and cannot rely on conclusory statements." *Id.* (citations and internal quotation marks omitted).  This showing must be made even when considering the deposition of a high-ranking, "apex" official.  *See Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) ("Even in cases where we have considered extensively a corporate officer's knowledge and, thus, capacity to provide information relevant to the case, we have declined to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden, and still required the corporate officer to meet Rule 26(c)(1)'s requirements.") (quotation omitted).  "[I]n this Circuit, depositions of high-level executives are addressed the same as any other potential witness: by examining relevance, proportionality, and (where a protective order is sought), whether there are specific facts showing that the deposition would lead to a clearly defined and serious injury." *Eight Mile Style, LLC v. Spotify USA Inc.*, 2022 WL 20936608, at *6 (M.D. Tenn. Mar. 31, 2022) (citing *id.*).

Defendants contend that searching for reports of "neglect, injury or self-harm" at all Spectrum facilities would create an undue burden far outweighed by any benefit Plaintiffs claim to seek.  One reason is the number of facilities whose records would need to be searched.  Defendants insist only the records from the two juvenile detention centers would be relevant, as Spectrum facilities service thousands of people each year from different populations—juveniles, those in

4

foster care, senior citizens, and developmentally delayed persons, for instance. Moreover, even relatively minor injuries are reported, such as when a senior citizen picks a scab and then bleeds.

Plaintiffs disagree. Defendant Spectrum Human Services is the parent company of Defendant Spectrum Juvenile Justice Services. They sue both entities on the theory that the Defendants' policies or customs led the employees to fail to properly monitor Juan and prevent his suicide. The parent company controls the policies and procedures of every facility and handles the training for all employees. Thus, according to Plaintiffs, how the parent company responded to any instances of injury or self-harm is relevant and proportional to the needs of the case.

Limiting the discovery request geographically is necessary. As Defendants pointed out, "Spectrum" runs many facilities throughout the state servicing a broad population needing specialized care. How employees monitor or care for seniors or children in foster care is not relevant here, or if there is some relevance, it is outweighed by the burden of searching the records of thousands of residents over a six-year period for appropriate instances of injury or self-harm. Searching all those records for instances of injury would be unduly burdensome. The Court will limit the request to Calumet and Lincoln juvenile detention facilities. In the Court's view, this limitation does not foreclose discovery related to the Defendant parent entity—what information the parent company had of instances of injury or self-

harm (defined below) at the juvenile justice centers will show the parent
company's response or lack thereof and would allow Plaintiffs to gather
information about policies and customs.  Plaintiffs do not need all injuries and self-
harm of every person in the care of any Spectrum facility to obtain information to
support their claim.

Aside from the burden of searching the records of thousands of otherwise
unrelated persons is the issue of what constitutes the kind of injury or self-harm
that is relevant here.  As noted, a senior citizen in the care of a Spectrum facility
who picked a scab and subsequently bled might have been recorded as engaging in
self-harm, or a resident who sprained their ankle playing basketball would have
been recorded as an injury.  Even Plaintiffs' counsel conceded that they are not
looking for the sprained ankle instances.

The Court will remove "neglect" from the list of "injury, self-harm, or
neglect" that must be searched for because the parties neither briefed that term nor
brought it up at the hearing.  During the hearing, Plaintiffs' counsel agreed that
records of suicide, attempted suicide, self-harm, or attempted self-harm would be
satisfactory.  The Court agrees.  The Court will not take Defendants' suggestion to
limit the requests to suicides or attempted suicides because, first, the only suicide
during the limited period is Juan's, and second, the determination considering what
is an attempted suicide is subjective.  How an employee interprets an instance of

6

self-harm might differ from one to the next—one employee may characterize it as

a suicide attempt, and another may not.  To capture as many relevant documents as

possible, Defendants must search for and produce instances of suicide, attempted

suicide, self-harm, and attempted self-harm in the juvenile centers' records.[1]  Thus,

the motion for protective order is **GRANTED IN PART**.  Supplemental

production must be complete **within 21 days** of this Order.

> 2.      Discovery Regarding Investigations (ECF Nos. 75, 84)

During defense counsel's deposition of Dakota Hayward, counsel began

discussing written statements that the deponent gave to an investigator.  This

discussion shocked Plaintiffs' counsel because the investigator and the

investigation were not previously disclosed.  During a status conference on this

issue, Defendants insisted that Plaintiffs had not asked in discovery about

investigations despite having been served an interrogatory asking for all persons

known to Defendants who may have knowledge of the facts in this lawsuit.  The

parties agreed that Plaintiffs would serve requests targeted at investigations and

Defendants would respond within 48 hours.  (*See* Minute Entry dated July 8,

2024).  Defendants responded with the statements taken by their investigators,

photographs taken by the investigators, documents given to the witnesses, and the

---

[1] The meaning of "self-harm" should be self-evident.  If the parties cannot agree on what this means, they are advised to contact the Court for a status conference.  The Court will likely rely on the definition provided by the Merriam-Webster dictionary.

only resume available from one of the three investigators.  (ECF No. 95, PageID.2946).

Plaintiffs insist that the supplemental responses are deficient because some documents were withheld on vague assertions of attorney work product.  (ECF No. 95, PageID.2943).  And even though they now have more information gathered from the investigations, Plaintiffs contend they were prejudiced by the failure to produce the information sooner because they were unable to adequately prepare for Hayward's deposition.  (*Id.*).  That said, counsel for Plaintiffs questioned Hayward during the deposition about what was discussed with the investigator and about the facts surrounding Juan's death, (ECF No. 77, PageID.2595), and confirmed on the record that they require no further information from Hayward.  In their brief, Plaintiffs ask the Court to sanction Defendants by deeming all of their affirmative defenses waived.  (ECF No. 75, PageID.2448).  At the hearing, counsel asked for sanctions in the form of a jury instruction stating that Defendants' withheld documents and for monetary sanctions.  Defendants argue that the privilege log sufficiently explains the reasons for withholding some documents, so supplemental production is unnecessary.

There are two issues here: whether the documents in fact contain protectable fact work product and whether the privilege log sufficiently raises the privilege.

Fact attorney work product is protected from disclosure by Fed. R. Civ. P. 26. Fact work product is "written or oral information transmitted to the attorney and recorded as conveyed by the client." *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986) (citations omitted). The work-product doctrine extends to "material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). "This is so, at least in part, because of the reality 'that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.'" *Lee v. EUSA Pharma US LLC*, 2024 WL 250064, at *4 (E.D. Mich. Jan. 23, 2024) (quoting *id.* at 238).

Underlying facts or data are not protected from disclosure. *West v. Lake State Ry Co.*, 321 F.R.D. 566, 570 (E.D. Mich. 2017) (citation omitted). Mere factual information gathered through investigation is discoverable, even if the information became known only because of the attorney's or investigator's efforts. *Id.* (citation omitted). Thus, to be considered protected work product, "the attorney [or agent] must have done something with the facts, e.g., edited film, summarized factual information, organized data, or created a chart or other demonstrative visual from the factual information. Without the attorney's handiwork, there is no attorney work product." *Hello Farms Licensing MI LLC v. GR Vending MI, LLC*, 2023 WL 6049505, at *3 (E.D. Mich. Sept. 15, 2023).

9

The withheld documents contain "(1) correspondence between the Defendants and/or its law firm and the investigators, (2) billings, receipts, and/or charges related to any investigation, (3) handwritten notes or otherwise recorded notes of the investigators, and (4) materials prepared for the investigators." (ECF No. 88, PageID.2880).

As demonstrated below, the insufficiency of the privilege log makes it difficult to determine whether the withheld documents are protectable as fact work product, or whether they contain only underlying facts that are not protected.

Correspondence between Defendants or its law firm and the investigators may be work product if it contains the attorney's mental impressions or includes summaries of facts or other "handiwork." On the other hand, any exchange of raw facts gathered during the course of the litigation is not protected. *See State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 215 (E.D. Pa. 2008) ("[T]he mere fact that counsel [] may have provided such information to the witness in preparation for the Rule 30(b)(6) deposition does not convert the information into attorney work product. . . . [Otherwise,] anytime an attorney is involved in preparing a Rule 30(b)(6) witness, such preparation would be futile because the witness would inevitably be precluded from testifying to anything learned from the attorney.").

10

Defendants insist that the request for billings, receipts, or charges related to investigations is problematic because this information could "illuminate when the investigators were retained, where the investigators traveled, and the breadth or depth of the investigations." (ECF No. 88, PageID.2883). The Court agrees to an extent—Plaintiffs are entitled to know how much each investigator was paid for their work, in total, for potential use in impeachment. But receipts and charges related to the investigation could show, as Defendants suggest, how much time the investigator spent with each witness, for instance, and that in turn could show the value that counsel placed on that witness's knowledge. At that point, Plaintiffs would encroach on an attorney's preparation of a case and decisions about relevance, which is protected. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (citation omitted).

Since mere factual information gathered by an attorney or investigator is not fact work product, *see West*, 321 F.R.D. at 570, handwritten or recorded notes of the investigators and material provided to the investigators is not work product unless the investigator added "handiwork" to the notes. This includes the last known contact information for formerly detained youths that Defendants' investigators spoke with or planned to speak.[2] Similarly, materials given to the

---

[2] The Court is referring to the "code sheet" provided and discussed during the hearing—it lists several children and staff members that were named as part of the State's investigation of Juan's death.

11

investigators that provide no more than underlying facts are not work product.  At the hearing, when asked for examples of the kinds of things in the documents that entitle them to protection, Defendants' counsel listed things included in the background investigation on certain witnesses—their litigation history, their criminal history, their social media history.  This is underlying facts or data.  There was no indication or demonstration that the "Background Investigation" documents contained anything besides pure facts obtained by the investigator.

Defendants' privilege log is unhelpful in better understanding the documents.

The privilege log is attached to Defendants' response to the motion at ECF No. 88-2.  The basis of the privilege for each entry is described as "Attorney Work Product."  Rule 26(b)(5) requires the party claiming privilege to serve a privilege log that "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Defendants' log does not meet this standard.  Plaintiffs cannot assess the applicability of the asserted privilege without some kind of description of the document or of the basis for the privilege, and neither can the Court.

Privilege logs that contain only "[b]oiler plate descriptions and allegations of protection or privilege," *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys.*

12

*LLC*, 2009 WL 3614997, at \*4 (E.D. Mich. Oct. 27, 2009), or "identify only the dates of the documents, a brief description providing no substantive information (e.g. 'Email correspondence with Mark W. Dobbins and Matt Jean'), and the asserted privilege," *Mafcote, Inc. v. Fed. Ins. Co.*, 2010 WL 1929900, at \*5 (W.D. Ky. May 12, 2010), are typically found insufficient.

Defendants' privilege is boilerplate and insufficient.  The Court cannot assess the veracity of the assertion of privilege.  The Court will not entertain a request to review the documents *in camera* because of Defendants' deficient privilege log—it was their burden to demonstrate to Plaintiffs and the Court that their designations are appropriate.  It is not the Court's burden to demonstrate in the first instance.

Even were the Court to review each challenged document and conclude that they all contain fact work product, the Court would still require disclosure.  There is an exception to the work-production protection—Plaintiffs could be entitled to "fact work product" if they can show that they have "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3).

Plaintiffs argue that they have substantial need for the information and that there is no other way of obtaining the information if not from these documents.  For instance, they have no realistic way of obtaining the last known contact

information for the kids formerly housed at the detention center that State investigators spoke with unless Defendants turn over that information (an in any event, the addresses are underlying facts, not work product).

The motion is **GRANTED IN PART**. Defendants must review the withheld documents and carefully scrutinize whether the work-product privilege applies to them. It is almost certain that at least some documents do not contain protectable work product and must be produced. They must produce unprotected documents **within 14 days** of this Order. Documents that continue to be withheld must be in a privilege log that meets the requirements explained above. If disputes remain after that, Defendants must provide the withheld documents to the Court for *in camera* review, along with the updated privilege log. Call chambers for further direction.

Defendants must also make their investigators available for deposition at the earliest possible date. The investigators must testify to their knowledge of the underlying facts—their notes, the witnesses' statements, what information they provided to the witnesses, what facts the attorneys provided to the investigators, how much the investigators were paid for their work, and the like. Correspondence between Defendants' counsel and the investigators is protected except for the exchange of facts.

Plaintiffs seek sanctions for Defendants' failure to provide the investigative material before Hayward's deposition. Defendants seek sanctions for having to

14

respond to the motion because they produced the documents Plaintiffs requested, except those withheld on attorney work product.

"[I]f the party learns that in some material respect the disclosure or response is incomplete or incorrect," Rule 26(e) requires supplemental responses in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). The rule also requires supplementation where additional responsive or corrective information "has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* Failure to supplement responses exposes that party to sanctions under Rule 37(c). Rule 37(c)(1) mandates exclusive of the information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure to supplement was substantially justified or harmless. Along with or instead of that sanction, that Court can order payment of reasonable costs and fees caused by the failure, inform the jury of the party's failure, or any other appropriate sanction. Fed. R. Civ. P. 37(c)(1)(A-C).

Plaintiffs were not prejudiced to an extent that requires an exclusion of evidence or a jury instruction. Plaintiffs assert they were prejudiced by this failure because counsel could not adequately prepare for the deposition, yet counsel was able to question Hayward about his written answers to the investigator (provided during the deposition), about the conversation with the investigator, and other facts relevant to this lawsuit. Counsel confirmed that he required no further

15

information from Hayward.  So the failure to provide information related to Hayward was harmless.  In addition, during the status conference on this dispute, it was agreed that Plaintiffs would serve a targeted request for investigative materials, and Defendants responded except for documents listed in the privilege log.

To alleviate any lingering prejudice, the Court is allowing Plaintiffs to depose the investigators.

That said, some sanction is warranted.  Because the privilege is so deficient that Plaintiffs could not assess the assertions of privilege and the Court could not make a more clearly defined ruling, the Court will require Defendants to pay Plaintiffs' reasonable costs and fees in bringing the motion to compel and for sanctions at ECF No. 75 and in arguing that motion before the Court.  If the parties cannot agree on reasonable costs and fees, Plaintiffs must file a bill of costs within 21 days of this Order.  Defendants must respond to that bill of costs within 14 days of service.

3. Defendants' Motion to Compel and Strike Plaintiffs' Witness List (ECF No. 85)

 Plaintiffs' initial disclosures and fact witness list identified 375 current and former staff of Defendants that they may call at the time of trial.  Most of those employees were not involved in Juan's care or post-incident investigation.  Defendants seek an order striking this witness list or requiring supplemental

16

response to Interrogatory No. 16.  Interrogatory No. 16 asks for lay witness contact information, dates Plaintiffs spoke with the witnesses, and a summary of each witness's anticipated testimony.  (ECF No. 85-4).  Plaintiffs responded that (1) each witness is a past or current Defendant employee, so Defendants have their last known contact information, (2) their attorney had only spoken with ten of the 375 witnesses via depositions so there is no more information to provide on the other witnesses, and (3) for the rest of the witnesses, they wrote that the witness may testify to their involvement in the investigation as well as the Defendants' policies, practices, procedures, and customs.  (*Id.*).  According to Defendants, Plaintiffs did not timely respond to the interrogatory, so they waived any objections.

In response, Plaintiffs say these witnesses were all identified in discovery and "potentially have relevant witness testimony regarding Plaintiff's Monell [sic] Claims."  (ECF No. 87, PageID.2808).  As a result, they included all 375 names in their witness list that was finalized on November 3, 2023.  Plaintiffs filed that witness list on November 27, 2023.  (*Id.* at PageID.2809).  Defendants took no action to challenge the witness list until this motion, nor did they attempt to depose any of the witnesses.  They contend that it is Defendants' burden to discern the substance of their own current or former employees' potential testimony, and their failure to do so should not now prejudice Plaintiffs.  (*Id.* at PageID.2810).  Plaintiffs assert that the challenge to the witness list is premature because they

need not disclose the contact information of witnesses who will testify at trial until 30 days before trial. (*Id.* at PageID.2814-15); Fed. R. Civ. P. 26(a)(3).

Defendants assert that seeking clarification on the witness list after the close of discovery is not premature. They note that Plaintiffs only cite an unpublished, out-of-Circuit case for support for not disclosing contact information until closer to trial. (ECF No. 89, PageID.2931). That said, they do not provide case law supporting the assertion that they are entitled to information about witnesses they chose not to investigate during discovery.[3]

Plaintiffs filed their first amended lay witness list on September 6, 2024, after the hearing and well after the close of discovery. This list appears to include all 375 former and current employees, but seems to reduce the number of total witnesses as compared to the initial witness list. (*Compare* ECF No. 42 *with* ECF No. 97). Since it appears that the 375 witnesses are still among Plaintiffs' potential trial witnesses, the amended witness list does not alter the calculus of the motion before the Court.

Rule 26(a)(3) provides that "a party must provide to the other parties and promptly file . . . the name and, if not previously provided, the address and

---

[3] Plaintiffs' citation to unpublished decisions is more persuasive than citation to no authority. That said, Plaintiffs also cited criminal cases related to the disclosure of trial witnesses. Because the Federal Rules of Civil Procedure do not apply in the criminal context, those cases have no persuasive value.

18

telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises[.]"  Fed. R. Civ. P. 26(a)(3)(A)(i). A party must disclose the name of witnesses at least thirty days before trial "[u]nless the court orders otherwise."  Fed. R. Civ. P. 26(a)(3); E.D. Mich. Local Rule 16.2(b)(8) ("Except as permitted by the Court for good cause a party may not list a witness [on the joint final pretrial order] unless the witness has been included on a witness list submitted under a prior order or has been deposed.").  If a party fails to provide information or identify a witness as required by Rule 26(a), Rule 37(c)(1) requires that a Court exclude such a witness from testifying, unless the failure was substantially justified or is harmless.  *Redmond v. United States*, 194 F. Supp. 3d 606, 612 (E.D. Mich. 2016).

The case management order required the parties to file their lay witness lists by November 27, 2023, identifying their names or with sufficient specificity to identify the persons.  (ECF No. 35).  Plaintiffs complied with the Order and rules of civil procedure—they gave the names and contact information they had, and otherwise sufficiently identified them so that Defendants, for whom these witnesses worked, can obtain their contact information.  Defendants took no action to obtain information from many of those witnesses before the close of discovery. Their failure to do so suggests that they are not significantly prejudiced.  *See Cotton v. Sassak*, 2008 WL 1882708, at *1-2 (E.D. Mich. Apr. 24, 2008).

Though the rules of civil procedure do not require a party to disclose in initial disclosures or lay witness lists the anticipated testimony or knowledge of the lay witnesses, Defendants' challenge is to Plaintiffs' response to an interrogatory for anticipated testimony—they do not want to be ambushed at trial by so many witnesses.  But Defendants cite no authority that would require Plaintiffs to narrow its witness list this far in advance of trial, which is essentially what Defendants are seeking.  "Since no trial date has yet been set in this case, [Plaintiffs have] no obligation to reveal the witnesses [they] may call.  In addition, requiring [Plaintiffs] to disclose the names of witnesses [they] anticipate[] calling would violate the work-product privilege." *Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 15 (D.D.C. 2004); *C & E Servs., Inc. v. Ashland Inc.*, 2008 WL 1744618, at *3 (D.D.C. Apr. 14, 2008) ("the Federal Rules of Civil Procedure do not require parties to identify lay witnesses who may be called to testify at trial until 30 days before trial, unless the court orders otherwise.").  Without any authority dictating that Plaintiffs narrow their witness list to those who Plaintiffs *will* call at trial, this far in advance of trial, the Court will not order them to do so.  Defendants were on notice of the 375 witnesses since November 27, 2023, and had the tools of discovery available to them to learn which of those witnesses has relevant information.  Defendants stated that most of those witnesses had no involvement in Juan's care or in the investigation, so it is improbable that those witnesses have

20

relevant information to offer.  Their failure to learn more about any of those

witnesses does not put the burden on Plaintiffs to narrow their list at this stage.

Given the foregoing, Plaintiffs' failure to timely respond to Interrogatory

No. 16 worked no obvious prejudice to Defendants.  The Court will not deem

objections waived and will not strike the witness list.  The motion to compel and to

strike the witness list is **DENIED**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are

required to file any objections within 14 days of service as provided for in Federal

Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as

error any defect in this Order to which timely objection was not made.  Fed. R.

Civ. P. 72(a).  Any objections are required to specify the part of the Order to which

the party objects and state the basis of the objection.  When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: September 12, 2024             s/Curtis Ivy, Jr.
                                    Curtis Ivy, Jr.
                                    United States Magistrate Judge